IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA            :     3:01 CR 272 (EBB)
                                                      :
v.                                                    :
                                                      :
PAUL SALCE, JR.                         :     DATE: OCTOBER 30, 2009
                                                      :
------------------------------------------------------x
```

<u>RULING FOLLOWING EVIDENTIARY HEARING</u>

On November 20, 2001, defendant pled guilty before Senior U.S. District Judge Ellen Bree Burns to mail fraud and money laundering arising from his employment at OR&L Construction Corporation ["OR&L"]. (Dkts. ##1-3). On February 8, 2002, Judge Burns sentenced him to fifty-one months imprisonment, three years of supervised release, and restitution to OR&L in the amount of $1,306,545.59, due and payable immediately, including $20,000 within thirty days of sentencing, and a special condition of his Supervised Release that he make monthly payments to OR&L in the amount of $1,5000, subject to modification by the Court should his financial condition change. (Dkts. ##10-12). Immediately after defendant was released from prison, on December 8, 2005, Judge Burns reduced his monthly payments to OR&L to $250, with the monthly payments to be adjusted upon the Court's reassessment of defendant's finances. (Dkt. #20).

On May 21, 2009, the Government filed a Writ of Garnishment, in the sum of $1,271,113.99, plus interest. (Dkts. ##29-30). On July 29, 2009, the Government filed its Request for Hearing and Response to Defendant's Request for Hearing (Dkt. #33).[1] That same day, defendant also filed his Request for Hearing on Wage

---

[1]Three exhibits are attached: copy of a financial affidavit, dated November 26, 2008 (Exh. A); copy of his wages, prepared by the Connecticut Department of Labor on July 21,

Garnishment, in which he requested a hearing to address "Judgment for support of minor children."  (Dkt. #35, at 2).[2]  That same day, defendant's employer, All Phase Construction ["All Phase"], through Ray Weiner,[3] filed its Answer of Garnishee, which indicates that defendant's weekly pay is $948.00, and that his net weekly pay is $710.24.  (Dkt. #36, at 2).  On September 9, 2009, Judge Burns referred all these motions to this Magistrate Judge (Dkt. #38), and a hearing was held thereon on October 28, 2009, at which defendant and Ray Weiner were the sole witnesses.  (Dkts. ##39-40).

According to the Government's brief, less than three weeks prior to defendant's guilty plea, his first wife, Debra Salce, commenced divorce proceedings against him; the judgment of dissolution, entered two weeks after his sentencing, included a child support order of $25/week until the Salces' children (then ten and twelve years old) attain the age of eighteen, with an arrearage to accrue while he was incarcerated.  (Dkt. #33, at 1-2).

Although defendant failed to make the $20,000 lump sum payment due in March 2002, OR&L was able to recover $207,231.53 through its independent collection efforts.  (Id. at 2).  Through defendant's monthly payments, OR&L has received another $8,170.00.  (Id. at 3).

---

2009 (Exh. B); and copy of the Connecticut Superior Court docket in Debra Salce v. Paul Salce, Jr., No. AAN-FA01-0076135S (Exh. C).

[2]Defendant refiled this request on August 12, 2009.  (Dkt. #37).

[3]As defendant and Weiner testified, All Phase is a construction company located in Bridgeport, CT, performing commercial and residential construction, all over the State of Connecticut.  Defendant testified that he is in charge of All Phase's Human Resources Department.  Weiner testified candidly that he knows that he is "taking a risk" in employing defendant, given his previous conviction, and as a result, All Phase has taken out a $400,000 to $500,000 insurance policy to protect it in case of misconduct by defendant.

Just three weeks after his term for supervised release expired, on November 28, 2008, defendant married Tammy Dominique, entering into a prenuptial agreement with her. (Id.).

At the evidentiary hearing on October 28, 2009, Government's counsel and defendant represented that defendant's monthly payment to OR&L was reduced to $150.00, but then was increased to $190.00 when defendant began his employment at All Phase. According to a Financial Statement, dated March 23, 2009, defendant was earning $4,829 a month, but his living expenses were $7,1017. (Exh. 1). As defendant and Weiner testified, since then, in light of the current economic conditions, his yearly income has been reduced from $52,000 to less than $50,000.[4] While he was still married to Dominique, and residing with her in their home in Brookfield, CT,[5] defendant would contribute approximately $400/week toward household expenses, and Dominique would make up the shortfall. He also testified that he borrows money against his credit cards to pay for monthly expenses, and had been current on his credit cards, "except for the last couple of weeks."

Defendant further testified that he and Dominique are now in the process of divorcing, and he will not receive anything from the marriage except for the motorcycle, in light of the prenuptial agreement he entered into with her. Just two weeks ago, he entered into a five-month lease for an apartment on Avalon Drive in

---

[4] All Phase has had two rounds of pay cuts across the entire company during 2009, and has reduced its work force from approximately 100 employees to approximately 50 employees. The accounting department, where defendant is employed, similarly has had its work force cut in half. All Phase has stopped making contributions to its employees' 401(k) pension plans.

[5] This home has a pool and deck. During their marriage, Dominique purchased a motorcycle as a "gift" for defendant. She also purchased a boat, although she lacks a boater's license; defendant has such a license. Dominique drives a Mercedes.

Shelton for $2,000/month.  He selected this apartment to be closer to his children and when asked why he chose such an expensive apartment, he responded that he "wanted something nice for my kids."  He further testified that he entered into a lease for a 2008 Nissan Titan, which lease expires in November 2010, at $675/month; again when asked why he chose such an expensive automobile, he responded that he wanted a "reliable" car when he was commuting from Brookfield to Bridgeport.  He testified that he is current on his child support payments ($800 per month) and also pays for his children's extracurricular activities.  Given that his monthly expenses greatly exceed his monthly net income, he recently started looking for part-time work, perhaps at a gym in Shelton.  He conceded that he accepts cash gifts from his parents, and gifts of food from relatives, such as an aunt and uncle. In prioritizing his financial needs, he places his children first, himself second, his child support obligations third, and restitution fourth.  He testified that he is doing "everything I possibly" can in "trying to make ends meet," that the Government is "trying to get blood from a stone," and that he has "nothing else to give."

  Defendant argued that if the Government's garnishment was enforced, his children would be the ones to "suffer," in that he would be forced to return to divorce court to seek a reduction in his child support.  Government's counsel responded that defendant could have chosen a more "modest" lifestyle, with a less expensive apartment and automobile.

  A similar situation was presented before Senior U.S. District Judge Peter Dorsey three years ago in U.S. v. Baldwin, 3:98 CR 215 (PCD), 2006 WL 2085278 (D. Conn. July 24, 2006), in which a criminal defendant was woefully behind in payments in his restitution order, causing the Government to file a wage

garnishment. Id. at *1-2. Under 28 U.S.C. § 3001 et seq., the full amount allowed by law for wage garnishment is twenty-five percent of a debtor's net earnings, which in Baldwin came to $538.50 per month. Id. at *3 & n.5. There, as here, the Government argued that it should be able to garnish the full amount permitted by law in light of defendant's "sporadic[]" payments. Id. There, Judge Dorsey held, as the Government argues here, that the defense of "an inability to pay other debts and expenses . . . is not permitted under 28 U.S.C. § 3202(d)." Id. (footnote omitted). Judge Dorsey further held: "Congress requires that defendants be ordered to make full restitution 'without consideration of the economic circumstances of the defendant.'" Id., quoting 18 U.S.C. § 3664(f)(1)(A). As Judge Dorsey scolded, in harsh words: "In this case, [d]efendant stole hundreds of thousands of dollars and it is only just that he be required to restore this property to its rightful owner." Id. However, while Judge Dorsey held that the Government was entitled to the full garnishment, defendant was encouraged to "make arrangements with the Assistant U.S. Attorney for an alternate payment plan," and that the Government was "permitted to garnish his wages [only] if [it] find[s] it necessary to do so." Id. at *4.

  The wise suggestion of Judge Dorsey in Baldwin is adopted here. The Magistrate Judge is sympathetic to defendant placing his children's welfare at the top of his priorities, and would not want to force defendant to return to Divorce Court, in order to seek a reduction of his child support payments. His children and first wife are just as much victims as OR&L. However, as Government's counsel appropriately pointed out, while defendant legitimately wanted to relocate closer to his children, he did not have to lease a luxury apartment in an Avalon complex. Similarly, there are many "reliable" cars he could have leased which were substantially less expensive

5

than $675/month.  Therefore, as in Baldwin, the Government is entitled to the full twenty-five percent of defendant's net wages, or $177.56 per week.  However, as in Baldwin, the A.U.S.A. and defendant are encouraged to negotiate an alternate payment plan, one in which defendant's payments increase in mid-March 2010, when his current lease in Shelton expires (and he can find a substantially less expensive apartment near his children) and in which his payments increase again in November 2010, when his car lease expires (and he can lease a substantially less expensive automobile). In the absence of reaching such an agreement, or defendant abiding by same, only then would the Government "find it necessary" to resort to the full garnishment.

See 28 U.S.C. § 636(b)(**written objections to ruling must be filed within ten days after service of same**); Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Sec'y, H & HS, 892 F.2d 15, 16 (2d Cir. 1989)(**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit.**).

Dated at New Haven, Connecticut, this 30th day of October, 2009.

/s/Joan G. Margolis, USMJ_____
Joan G. Margolis
U.S. Magistrate Judge

6